UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-03080 JAK (JEMx) | Date | February 8, 2017 |
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CLASS CERTIFICATION AND PLAN OF ALLOCATION [DKT. 84]; MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES [DKT. 86]**

**I.     Introduction**

On April 24, 2015, Nickolas Van Wingerden[1] and Brian Kovar ("Lead Plaintiffs") brought this action (the "Action") on behalf of a putative class of purchasers of Cadiz securities ("Class Members"). The Complaint named Cadiz Inc., Scott S. Slater, Timothy J. Shaheen, and Keith Brackpool ("Defendants"). Dkt. 1. The claims arise from alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 that was promulgated pursuant to that statute (17 C.F.R. § 240.10b-5). Dkt. 46 at ¶¶ 119-36. The operative Second Amended Complaint ("SAC") alleges that "Defendants knowingly and/or recklessly issued false and misleading statements regarding the company's Cadiz Valley Water Conservation, Recovery and Storage Project (the 'Project') and failed to disclose material information regarding communications between Defendants and the U.S. Department of Interior's Bureau of Land Management relating to the Project." Dkt. 72 at 3; Dkt. 46 at ¶¶ 119-36.

On December 2, 2015, Defendants brought a Motion to Dismiss the SAC. Dkt. 54. Plaintiffs opposed this motion and submitted a related Motion to Strike certain exhibits included in the declaration accompanying the Motion to Dismiss. Dkt. 55-57. Defendants opposed the Motion to Strike. Dkt. 59. The Court held a hearing on both motions and took the matters under submission. Dkt. 63, 65.

On April 26, 2016, while those matters were still pending, the parties engaged in a full day mediation session with David Geronemus, a private neutral. Dkt. 72 at 2. Although the parties did not reach an agreement at that time, they "continued to negotiate over the ensuing days and Geronemus continued his

---

[1] In the pleadings, Wingerden is also referred to as "Windgerden."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-03080 JAK (JEMx) | Date | February 8, 2017 |
|---|---|---|---|
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | |

efforts to help the [p]arties reach a settlement." *Id.* Ultimately, the parties reached a settlement (the "Settlement") after Geronemus made a proposal to the parties on April 29, 2016, that each side accepted. *Id.*

On May 6, 2016, the parties filed a notice of settlement ("Settlement Agreement"). Dkt. 68. On June 16, 2016, Plaintiffs filed a Motion for Preliminary Approval of the Settlement Agreement ("Motion"). Dkts. 71-73. The Court considered the matters raised with respect to the Motion, concluded that, pursuant to Fed. R. Civ. P. 78 and Local Rule 7-15, the matters could be decided without oral argument, and took the Motion under submission. Dkt. 75. Thereafter, on July 11, 2016, the Court requested supplemental briefing and an Excel spreadsheet summarizing the attorney's fees sought by Plaintiffs pursuant to Exhibit H of the Court's Standing Orders. Dkt. 76. On July 14, 2016, Plaintiffs filed supplemental briefing with respect to the requested additional information. Dkt. 77.

On September 30, 2016, the Motion for Preliminary Approval of the Settlement Agreement was granted in part. Dkt. 78. All matters other than the payment of service fees to the Lead Plaintiffs were approved on a preliminary basis. *Id.* That Order provided that the issue of service fees would be addressed in a Motion for Final Approval. *Id.*

On January 3, 2017, Plaintiffs filed the Motion for Final Approval of the Settlement Agreement (Dkt. 84) and a Motion for Attorney's Fees and Costs (Dkt. 86). A Memorandum in Further Support of Final Approval was filed on January 24, 2017. Dkt. 89. A hearing on these matters was held on February 6, 2017, and they were taken under submission. For the reasons stated in this Order, each Motion is **GRANTED**.

**II.    Factual and Procedural Background**

    **A.    Terms of the Settlement Agreement**

The Settlement Agreement, which was provided to all potential class members, included the following provisions.

        1.    General Definitions in the Settlement Agreement

"Settlement Class" means:

> [A]ll Persons (including, without limitation, their beneficiaries) who purchased the common stock of Cadiz between March 11, 2014 and October 9, 2015, inclusive, ("Class Period") and did not sell all of such common stock prior to April 21, 2015. Excluded from the Settlement Class are (i) persons who suffered no compensable losses, *e.g.*, those who bought Cadiz common stock during the Class Period but sold prior to any alleged corrective disclosure; (ii) Opt-Outs; and (iii) Defendants and any entity in which the Defendants have a controlling interest, and the officers, directors, affiliates, legal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-03080 JAK (JEMx) | Date | February 8, 2017 |
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | |

representatives, immediate family members, heirs, successors, subsidiaries and/or assigns of any such individual or entity in their capacity as such.

Dkt. 73 Ex. 1 at ¶ 1.28.

"Authorized Claimant" means any Settlement Class Member "who is a Claimant and whose claim for recovery has been allowed pursuant to the terms of this Stipulation, the exhibits hereto, and any order of the Court." Dkt. 73 Ex. 1 at ¶ 1.3.

"Claimant" means any Settlement Class Member who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe." *Id.* at ¶ 1.4.

"Claims Administrator" means "Strategic Claims Services, which shall administer the Settlement." *Id.* at ¶ 1.6.

"Plaintiffs' Counsel" means The Rosen Law Firm, P.A. ("Rosen Law Firm") and Glancy Prongay & Murray LLP ("Glancy Law Firm"). *Id.* at ¶ 1.19.

2. Release of Claims

The Settlement Agreement resolves

> any and all Claims, including Unknown Claims, that have been, could have been, or in the future can or might be asserted in any federal, state or foreign court, tribunal, forum or proceeding by on or [sic] behalf of any of the Releasing Parties against any one or more of the Released Parties, whether any such Released Parties were named, served with process, or appeared in the Action, which directly or indirectly arise out of or relate to (i) the subject matter of the Action or any of the claims asserted in the Action, (ii) the purchase or sale of Cadiz common stock by any of the Releasing Parties during the Class Period, and/or (iii) any claims in connection with, based upon, arising out of, or relating to the Settlement (but excluding any claims to enforce the terms of the Settlement).

*Id.* ¶ 1.23.

3. Settlement Payments

Pursuant to the terms of the Settlement Agreement, Defendant agreed to pay Authorized Claimants $3 million plus interest ("Settlement Fund"). *Id.* at ¶¶ 1.27, 2.1. The Settlement Fund includes any amount attributable to: (i) taxes and tax expenses; (ii) administrative costs; (iii) attorney's fees and expenses; and (iv) service awards to Lead Plaintiffs. *Id.* at ¶ 7.2. The Net Settlement Fund is the amount actually payable to the Authorized Claimants after these expenses are deducted. *Id.* The Net Settlement Fund is to be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-03080 JAK (JEMx) | Date | February 8, 2017 |
|---|---|---|---|
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | |

allocated to the Authorized Claimants pursuant to the Recognized Claim formula set forth below, assuming that there are sufficient funds to make these payments:

(A) For shares purchased between March 11, 2014 and April 20, 2015, inclusive, and sold prior to April 21, 2015, the Recognized Claim will be zero.
(B) For shares purchased during the Class Period and sold during the period April 21, 2015 to October 8, 2015, inclusive, the Recognized Claim per share will be the *lesser* of: (1) the inflation per share upon purchase (as set forth in Inflation Table A below) less the inflation per share upon sale (as set forth in Inflation Table A below); or (2) the purchase price per share minus the sales price per share.
(C) For shares purchased during the Class Period and sold during the period October 9, 2015 to January 6, 2016, inclusive, the Recognized Claim will be the *lesser* of: (1) the inflation per share upon purchase (as set forth in Inflation Table A below); or (2) the difference between the purchase price per share and the average closing stock price as of date of sale provided in Table B below.
(D) For shares purchased during the Class Period and retained as of the close of trading on January 6, 2016, the Recognized Claim will be the *lesser* of: (1) the inflation per share upon purchase (as set forth in Inflation Table A below); or (2) the purchase price per share minus $3.77 per share.[2]

Dkt. 73 Ex. A-1 at 7-8. This formula is referred to as the "Plan of Allocation." *Id.* at 9.

The Settlement Agreement includes the following tables. Table A shows the claimed inflation per share upon purchase and Table B the purchase price per share and the average closing stock price as of the date of sale. *Id.* at 7-10.

| TABLE A | |
|---|---|
| **Purchase or Sale Date Range** | **Artificial Inflation** |
| March 11, 2014 to April 20, 2015, inclusive | $5.61 per share |
| April 21, 2015 to October 4, 2015, inclusive | $4.89 per share |

---

2 Plaintiffs refer to Section 21(D)(e)(1) of the Private Securities Litigation Reform Act of 1995, which provides:
[I]n any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated.

Dkt. 73 Ex. A-1 at 8 n.2 (quoting Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4). "$3.77 per share was the mean (average) daily closing trading price of Cadiz common stock during the 90-day period beginning on October 9, 2015 and ending on January 6, 2016." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. | LA CV15-03080 JAK (JEMx) |
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. |

| | | Date | February 8, 2017 |
|---|---|---|---|

| | |
|---|---|
| October 5, 2015 | $1.90 per share |
| October 6, 2015 | $1.49 per share |
| October 7, 2015 | $1.00 per share |
| October 8, 2015 | $.58 per share |
| October 9, 2015 | $.00 per share |

| TABLE B | | | | | |
|---|---|---|---|---|---|
| Date of Sale | Closing Price | Average Closing Price | Date of Sale | Closing Price | Average Closing Price |
| 10/9/2015 | $3.01 | $3.01 | 11/20/2015 | $3.20 | $3.30 |
| 10/12/2015 | $2.87 | $2.94 | 11/23/2015 | $3.20 | $3.30 |
| 10/13/2015 | $2.92 | $2.93 | 11/24/2015 | $3.50 | $3.31 |
| 10/14/2015 | $3.23 | $3.01 | 11/25/2015 | $3.65 | $3.32 |
| 10/15/2015 | $3.23 | $3.05 | 11/27/2015 | $3.61 | $3.32 |
| 10/16/2015 | $3.47 | $3.12 | 11/30/2015 | $3.73 | $3.34 |
| 10/19/2015 | $3.78 | $3.22 | 12/1/2015 | $3.79 | $3.35 |
| 10/20/2015 | $3.56 | $3.26 | 12/2/2015 | $4.02 | $3.37 |
| 10/21/2015 | $3.46 | $3.28 | 12/3/2015 | $4.25 | $3.39 |
| 10/22/2015 | $3.94 | $3.35 | 12/4/2015 | $4.25 | $3.41 |
| 10/23/2015 | $3.60 | $3.37 | 12/7/2015 | $4.14 | $3.43 |
| 10/26/2015 | $3.54 | $3.38 | 12/8/2015 | $4.11 | $3.44 |
| 10/27/2015 | $3.33 | $3.38 | 12/9/2015 | $4.09 | $3.46 |
| 10/28/2015 | $3.35 | $3.38 | 12/10/2015 | $4.30 | $3.48 |
| 10/29/2015 | $3.30 | $3.37 | 12/11/2015 | $4.20 | $3.49 |
| 10/30/2015 | $3.42 | $3.38 | 12/14/2015 | $4.43 | $3.51 |
| 11/2/2015 | $3.52 | $3.38 | 12/15/2015 | $4.20 | $3.53 |
| 11/3/2015 | $3.54 | $3.39 | 12/16/2015 | $4.21 | $3.54 |
| 11/4/2015 | $3.59 | $3.40 | 12/17/2015 | $4.04 | $3.55 |
| 11/5/2015 | $3.48 | $3.41 | 12/18/2015 | $3.82 | $3.56 |
| 11/6/2015 | $3.32 | $3.40 | 12/21/2015 | $3.82 | $3.56 |
| 11/9/2015 | $3.07 | $3.39 | 12/22/2015 | $3.85 | $3.57 |
| 11/10/2015 | $3.05 | $3.37 | 12/23/2015 | $4.19 | $3.58 |
| 11/11/2015 | $3.18 | $3.37 | 12/24/2015 | $4.24 | $3.59 |
| 11/12/2015 | $2.98 | $3.35 | 12/28/2015 | $4.21 | $3.60 |
| 11/13/2015 | $3.06 | $3.34 | 12/29/2015 | $4.17 | $3.61 |
| 11/16/2015 | $3.03 | $3.33 | 12/30/2015 | $5.30 | $3.64 |
| 11/17/2015 | $3.09 | $3.32 | 12/31/2015 | $5.26 | $3.67 |
| 11/18/2015 | $3.16 | $3.31 | 1/4/2016 | $5.76 | $3.71 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-03080 JAK (JEMx) | | Date | February 8, 2017 |
|---|---|---|---|---|
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | | |

| | | | | | |
|---|---|---|---|---|---|
| 11/20/2015 | $3.20 | $3.31 | 1/5/2016 | $5.69 | $3.74 |
| 11/23/2015 | $3.20 | $3.31 | 1/6/2016 | $5.66 | $3.77 |
| 11/19/2015 | $3.13 | $3.31 | | | |

*Id.* at 8-10.

The Settlement Agreement also provides:

> If, however, the amount in the Net Settlement Fund is not sufficient to permit payment of the total Recognized Claim of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's Recognized Claim bears to the total Recognized Claims of all Authorized Claimants (*i.e.,* "*pro rata* share").

*Id.* at 7. "No distribution will be made on a claim where the potential distribution amount is less than ten dollars ($10.00) in cash." *Id.*

"The Settlement represents an average recovery of $0.17 per share" before fees and expenses are deducted for the "17.7 million shares outstanding during the Class Period," or an average recovery of $0.12 per share after such fees and expenses are deducted *Id.* at 1-2.

    4.  <u>Notice</u>

The Settlement Agreement required Defendants to provide Lead Counsel or the Claims Administrator "transfer records in electronic searchable form, such as Excel, containing the names and addresses of Persons who purchased or otherwise acquired Cadiz common stock during the Class Period." Dkt. 73 Ex. 1 at ¶ 5.2.

It also provides that the Claims Administrator would mail by first class mail, postage prepaid the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and the Proof of Claim and Release ("Proof of Claim") to all Class Members who, with reasonable effort, could be identified within 28 days of the entry of the Order granting preliminary approval of the settlement. Dkt. 73 Ex. A at ¶ 10. The Claims Administrator was also required to provide notice of the Settlement to "nominee owners such as brokerage firms and other persons or entities who purchased Cadiz common stock during the Class Period." *Id.* at ¶ 13. The nominee owners were to forward the Notice and Proof of Claim to the beneficial owners or to provide the contact information of the beneficial owners to the Claims Administrator, who was then to send them the Notice and Proof of Claim. *Id.*

Within ten days of entry of the Order, the Claims Administrator was required to publish the Summary Notice of Pendency and Proposed Settlement of Class Action ("Summary Notice"), once electronically on *GlobeNewswire* and once in print in *Investor's Business Daily*. *Id.* at ¶ 15. The Summary Notice explained

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-03080 JAK (JEMx) | Date | February 8, 2017 |
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | |

how Class Members who did not receive the Notice could receive it and briefly described the nature of the Settlement. Dkt. 73 Ex. A-2 at 1-2.

The Settlement Agreement provides that the Claims Administrator would determine the amount of the Net Settlement Fund payable to each Authorized Claimant based upon the Authorized Claimant's Recognized Claim. Dkt. 73 Ex. A-1 at 6.

      5.      <u>Responses to Class Notice</u>

To qualify for a recovery from the Net Settlement Fund, a Class Member was required to respond to the Notice with a Proof of Claim within 75 days from the date of the Order. Dkt. 73 Ex. A at ¶ 17. Proof of Claims were "deemed to have been submitted when legibly postmarked (if properly addressed and mailed by first-class mail) provided such Proof of Claim was actually received before the filing of a motion for an Order of the Court approving distribution of the Net Settlement Fund." *Id.* If the Proof of Claim was submitted in any other manner, the Settlement Agreement provided that it would be "deemed to have been submitted when it was actually received" by the Claims Administrator. *Id.* If a class member submitted a deficient Proof of Claim, the Claims Administrator would send a deficiency or rejection letter and provide the class member at least 7 days to cure the deficiency "if it . . . appear[s] that such deficiency may be cured." *Id.*

A Class Member who wished to opt out of the Settlement Class was required to send that request, "in written form, by first class mail, postage prepaid, or otherwise deliver it, so that it is postmarked no later than thirty (30) calendar days prior to the Final Settlement Hearing." *Id.* at ¶ 19.

Pursuant to the terms of the Settlement Agreement, all Class Members were deemed to have received notice of the Settlement after the Notice was mailed and the Summary Notice was published. "No Class Member will be relieved from the terms of the Settlement, including the releases provided for therein, based upon the contention or proof that such Class Member failed to receive actual or adequate notice." *Id.* at ¶ 16.

      6.      <u>Service Awards, Attorney's Fees and Litigation Costs</u>

The Settlement Agreement provided that Plaintiffs' Counsel would file a motion seeking an award of attorney's fees in an amount not to exceed the greater of 25% of the Settlement Fund or $750,000, and costs not to exceed $100,000. Dkt. 73 Ex. A-1 at 1-2.

    **B.**    **Dissemination of Settlement Agreement**

On October 24, 2016, the Claims Administrator distributed Notice Packets, which included the Settlement Agreement and the Proof of Claim Form, to 14 individuals and entities identified as potential members of the Settlement Class and their nominees. Joint Declaration of Kara M. Wolke and Phillip Kim ("Joint Decl."), Dkt. 88 at ¶ 45. It also mailed or e-mailed 1498 letters to the nominee account holders and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-03080 JAK (JEMx) | Date | February 8, 2017 |
|---|---|---|---|
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | |

institutional groups contained on the master mailing list of the Claims Administrator. That list included 818 of the largest banks and brokerage companies, and 680 mutual funds, insurance companies, pension funds and money managers that may have traded or owned Cadiz common stock through their own accounts or those of their clients. *Id.* The letter asked the recipients to send Notice Packets to beneficial owners or provide the Claims Administrator with a list of names and addresses so that the Claims Administrator could do so. *Id.*

The Claims Administrator also submitted notice of the Settlement Agreement for publication on the Legal Notice System that provides participants the ability to search and download legal notices and receive e-mail alerts. *Id.* at ¶ 47. In addition, it posted the notice agreement on its website at www.strategicclaims.net/cadiz. *Id.* at ¶ 49. It also caused notice to be transmitted over *Globe Newswire* on October 7, 2016, and published in print in *Investor's Business Daily* on October 10, 2016. *Id.* at ¶ 50.

As of December 27, 2016, the Claims Administrator had disseminated 4886 Notice Packets, including 103 that were initially returned as undeliverable. *Id.* at ¶ 48. Where possible, the undeliverable Notice Packets were re-mailed after updated addresses were identified. *Id.*

The deadline for class members to opt out of the Settlement Class was January 7, 2017, and the deadline for objections to the terms of the Settlement Agreement was January 17, 2017. *Id.* at ¶ 51.

As of January 24, 2017, no class members had asked to opt out of the Settlement Class or objected to the Settlement Agreement, the Plan of Allocation, or the motion for attorney's fees and litigation expenses filed by Co-Lead Counsel. Declaration of Josephine Bravata ("Second Bravata Decl."), Dkt. 90-1 at ¶ 4. The Claims Administrator estimated that 2780 valid claims and 276 deficient claims were submitted. *Id.* at ¶ 6. The valid claims represented $11,689,435 of recognized losses. *Id.*

### III. Motion for Final Approval

#### A. Legal Standard

##### 1. Class Certification

The "threshold task" when deciding a motion for final approval of a class action settlement is to ascertain whether the proposed agreement satisfies the following requirements of Fed. R. Civ. P. 23(a): (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "A court must also determine whether "the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Id.* at 1022. Rule 23(b)(2), which is at issue here, requires that the "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

##### 2. Final Settlement Approval

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-03080 JAK (JEMx) | Date | February 8, 2017 |
|---|---|---|---|
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | |

Fed. R. Civ. P. 23(e) establishes a two-step process for judicial approval of a proposed classwide settlement. First, in the preliminary approval process, the court must make a preliminary determination whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *See Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). Then, after preliminary approval, notification of class members and the compilation of information as to any objections by class members, the court determines whether final approval of the settlement should be granted.

The court's assessment of the settlement is based on the consideration and evaluation of several factors. The Ninth Circuit has identified eight, non-exclusive factors that may be considered during both the preliminary and final approval processes:

- The strength of the plaintiff's case;
- The risk, expense, complexity and likely duration of further litigation;
- The risk of maintaining class action status throughout the trial;
- The amount offered in settlement;
- The extent of discovery completed and the stage of the proceedings;
- The experience and view of counsel;
- The presence of a governmental participant; and
- The reaction of the class members to the proposed settlement.

*See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Each factor does not necessarily apply to every class action settlement. Further, in certain cases, other factors may be considered. For example, courts often consider whether the settlement is the product of arms-length negotiations. *See Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). Where, as here, the proposed settlement is reached before formal class certification, a "more exacting review" is required, "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citations omitted).

    **B.**    **Application**

        1.    <u>Class Certification</u>

The September 30, 2016 Preliminary Approval Order ("Prior Order") determined that the Class, as defined, met the requirements of Fed. R. Civ. P. 23. Dkt. 78 at 12. The Prior Order also concluded that the requirements for numerosity, commonality and typicality under Rule 23(a) had been met. *Id.* at 9-10. It also determined that the requirement for adequacy of Lead Plaintiffs and Counsel had been met, with the proviso that the Court would revisit the amount of any payment to Lead Plaintiffs in connection with any request for final approval. *Id.* at 11. The Prior Order also concluded that the requirements for predominance and superiority under Rule 23(b) had been met. *Id.* at 11-12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-03080 JAK (JEMx) | Date | February 8, 2017 |
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | |

Lead Plaintiffs request a total of $700 in reimbursement for expenses incurred and efforts made during the course of litigation. Of this amount, $200 is to be paid to Van Wingerden and $500 to Kovar. Dkt. 87 at 33. The Private Securities Litigation Reform Act ("PSLRA") provides that class representatives may recover "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C.A. § 78u-4. The amount Plaintiffs have requested here reflects a rate of $25 per hour for Van Wingerden and $40 per hour for Kovar for the time that each devoted to the litigation of this action. *See* Declaration of Nickolas Van Wingerden ("Van Wingerden Decl."), Dkt. 88-2 at ¶ 10; Declaration of Brian Kovar ("Kovar Decl."), Dkt. 88-3 at ¶ 10. Each of these amounts is significantly less than other courts have approved as reimbursement for lead plaintiffs in securities actions. *See, e.g., In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1049 (N.D. Cal. 2008) (approving $29,913.80 in reimbursement); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005) (approving between $5,000 and $15,000 in reimbursement); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173 (S.D. Cal. 2007) (approving $40,000.00 in reimbursement). Because these rates are reasonable and reflect work performed for the benefit of the class, the requested payments to the Lead Plaintiffs do not create a conflict of interest. Lead Plaintiffs are adequate class representatives.

The remainder of the conclusions in the Prior Order are unchanged. Therefore, for the reasons stated in the Prior Order, the requirements of both Rule 23(a) and (b)(2) have been satisfied.

      2.      <u>Final Settlement Approval</u>

The Prior Order concluded that the Settlement Agreement was sufficiently fair, reasonable and adequate to warrant preliminary approval. Dkt. 78. It addressed the *Linney* factors, and concluded that the strength of case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status throughout the trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings and the experience and view of counsel all supported approval. *Linney*, 151 F.3d at 1242. These considerations have not changed since the Prior Order was issued. Therefore, they are adopted in this Order.

Plaintiffs now present additional evidence about the response of the Class Members to the proposed settlement. The notice sent to them included the following information about how someone could opt out of the Settlement Class:

> If you do not want to receive a payment from this Settlement, and you want to keep any right you may have to sue or continue to sue Defendants on your own based on the legal claims raised in this Class Action, then you must take steps to get out of the Settlement. This is called excluding yourself from – or "opting out" of – the Settlement. To validly exclude yourself from the Settlement, you must mail a letter stating you want to be excluded as a Class Member from Nickolas Van Wingerden v. Cadiz Inc., et al., Case No. 15-cv-03080-JAK-JEM. You must include your name, address, telephone number, email contact information (if any) and your signature, along with an accurate list of all of your purchases and sales of Cadiz common stock during the Class Period,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-03080 JAK (JEMx) | Date | February 8, 2017 |
|---|---|---|---|
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | |

> including the date, number of shares and price of the shares purchased or sold and supporting account documentation.

Dkt. 73 Ex. A-1 at 9.

It also provided instructions for objecting to the Settlement Agreement:

> You can tell the Court you do not agree with the Settlement, any part of the Settlement, the Plan of Allocation and/or Plaintiffs' Counsel's motion for attorneys' fees and litigation expenses, and that you think the Court should not approve the Settlement, by mailing a letter stating that you object to the Settlement in the matter of *Nickolas Van Wingerden v. Cadiz Inc., et al.*, Case No. 15-cv-03080-JAKJEM. Be sure to include your name, address, telephone number, your signature, a list of your purchases and sales of Cadiz common stock during the Class Period, including the date, number of shares and price of the shares purchased or sold in order to show your membership in the Class, and all of the reasons you object to the Settlement.

*Id.* at 10.

As noted above, no class member opted out of the Settlement Class or submitted an objection. Second Bravata Decl., Dkt. 90-1 at ¶ 4. The Claims Administrator received 2780 valid claims, representing a total of $11,689,435 in recognized losses. *Id.* at ¶ 6. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004)).

Thus, all of the applicable *Linney* factors favor final approval of the Settlement Agreement.

        3.      <u>Final Approval of the Plan of Allocation</u>

The notice sent to Class members included the following statement:

> The Plan of Allocation is a matter separate and apart from the proposed Settlement, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement. The Court may approve the Plan of Allocation with or without modifications agreed to among the Parties, or another plan of allocation, without further notice to Class Members.

Dkt. 73 Ex. A-1 at 4. It further stated,

> the Recognized Claim formula, set forth below, is not intended to be an estimate of the amount of what a Settlement Class Member might have been able to recover after a trial, nor is it an estimate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-03080 JAK (JEMx) | Date | February 8, 2017 |
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | |

of the amount that will be paid to Authorized Claimants pursuant to the Settlement. The Recognized Claim formula is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants.

*Id.* at 4-5.

As noted above, the Plan of Allocation detailed in the notice sent to Class Members distributes the proceeds of the settlement on a *pro rata* basis. Dkt. 73 Ex. A-1 at 7-8. The Plan of Allocation recognizes four categories of "Recognized Claims." Recognized Claims are grouped by date as follows:

(A)  For shares purchased between March 11, 2014 and April 20, 2015, inclusive, and sold prior to April 21, 2015, the Recognized Claim is zero.
(B)  For shares purchased during the Class Period and sold during the period April 21, 2015 to October 8, 2015, inclusive, the Recognized Claim per share is the *lesser* of: (1) the inflation per share upon purchase less the inflation per share upon sale; or (2) the purchase price per share minus the sales price per share.
(C)  For shares purchased during the Class Period and sold during the period October 9, 2015 to January 6, 2016, inclusive, the Recognized Claim is the *lesser* of: (1) the inflation per share upon purchase; or (2) the difference between the purchase price per share and the average closing stock price as of date of sale.
(D)  For shares purchased during the Class Period and retained as of the close of trading on January 6, 2016, the Recognized Claim will be the *lesser* of: (1) the inflation per share upon purchase (as set forth in Inflation Table A below); or (2) the purchase price per share minus $3.77 per share.

*Id.*

Plaintiffs state that the proposed Plan of Allocation was developed in consultation with a damages expert and reflects the underlying theory of recoverable damages. Joint Decl., Dkt. 88 at ¶ 54. The damages are calculated based upon the timing of purchases and sales. *Id.* The formula "attempts to eliminate the effects of market forces unrelated to the alleged misrepresentations and omissions and factors in the relative strengths and weaknesses of the corrective disclosure dates and movement of the price of Cadiz securities." *Id.* The Recognized Claims generally reflect the difference between the estimated artificial inflation on the purchase date and the estimated artificial inflation on the sale date, or the difference between the actual purchase price and the sales price, whichever is less. *Id.* at ¶ 55.

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (quoting *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1-2 (N.D. Cal. June 16, 1994)). "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *Id.*; *see also Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-03080 JAK (JEMx) | Date | February 8, 2017 |
|---|---|---|---|
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | |

11-00406 DOC, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'").

In *Omnivision*, the court approved a Plan of Allocation very similar to the proposed here. *Id*. That plan divided the shares held by class members into three distinct groups based on the date they were purchased and sold. *Id*. Disbursement was "allocated on a per-share basis," which the court noted provided each class member with a portion of the settlement fund "proportional to the number of shares owned in the second group, and therefore proportional to actual injury." *Id*. at 1045-46. Similarly, in *Vinh Nguyen*, the Plan of Allocation used a recognized loss value calculated for each share that depended upon when that share was purchased and sold. *Vinh Nguyen,* 2014 WL 1802293 at *5. It then distributed the settlement fund on a pro rata basis according to the recognized loss sustained by each class member. *Id*.; *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173 (S.D. Cal. 2007) (approving a plan that "provide[d] a different formula based on three purchase periods; each reflecting the market's reaction to each new piece of information").

Similarly, the plan here involves allocations among four groups based on time periods, and allocates recovery according to an approximation of the losses for each. This weighs in favor of approval. Further, as noted above, no Class Members have objected to the plan.

Plaintiffs also state that the Plan of Allocation was developed with the assistance of a damages expert. Joint Decl., Dkt. 88 at ¶ 54. However, Plaintiffs neither submitted any materials prepared by this person nor identified him or her. Consequently, no determination can be made as to the role that person played in the development of the plan.

Taking all of these factors into consideration shows that the Plan of Allocation is fair, reasonable and adequate.

        4.     <u>Final Approval of Notice Plan</u>

In the Prior Order, the Court concluded that the notice to class members was adequate. Dkt. 78 at 22. As the notice did not change subsequent to that conclusion, the Court adopts it here.

    **C.**    **Conclusion**

For the reasons stated above, the Motion for Final Approval is **GRANTED**.

**IV.**    <u>**Motion for Attorney's Fees**</u>

    **A.**    **Legal Standard**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-03080 JAK (JEMx) | Date | February 8, 2017 |
|---|---|---|---|
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | |

Attorney's fees and costs "may be awarded in a certified class action where so authorized by law or the parties' agreement"; however, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *see also* Fed. R. Civ. P. 23(h). "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have [been] obtained." *Staton*, 327 F.3d at 964.

A district court must "assure itself that the fees awarded in the agreement [are] not unreasonably high, so as to ensure that the class members' interests [are] not compromised in favor of those of class counsel" or class representatives. *Id.* Factors considered in examining the reasonableness of the fee include: (1) whether the results achieved were exceptional; (2) risks of litigation; (3) non-monetary benefits conferred by the litigation; (4) customary fees for similar cases; (5) the contingent nature of the fee and financial burden carried by counsel; and (6) the lawyers' "reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

In common fund cases, a district court has discretion to choose either "the percentage-of-fund or the lodestar method" to assess the reasonableness of requested attorney's fees. *Id.* at 1047. When the percentage-of-fund method is chosen, 25% of the total settlement amount is the "benchmark." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989). Any amount between 20-30% is within the "usual range." *Vizcaino*, 290 F.3d at 1047. That amount may be "adjusted upward or downward to account for any unusual circumstances involved in [the] case." *Paul*, 886 F.2d at 273. Although 25% is the "starting point," it may in some instances be a windfall, *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002), and for this reason, the selection of the benchmark or any other rate "must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. If a court elects to employ a percentage-of-fund method, it may "cross-check" this amount by calculating the lodestar. *Id.* at 1050. "Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.*

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Products Liability Litigation,* 654 F.3d at 941. After the lodestar amount is determined, a trial court "may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir.2000). A court has discretion to "adjust the lodestar upward or downward using a multiplier that reflects a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Stetson v. Grissom*, 821 F.3d 1157, 1166-67 (9th Cir. 2016) (internal quotation marks and citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-03080 JAK (JEMx) | Date | February 8, 2017 |
|---|---|---|---|
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | |

    **B.**    **Application**

Plaintiffs' counsel seek a fee award of $750,000, which represents 25% of the total settlement amount. In addition, they seek $43,353.94 in litigation expenses for counsel and the aforementioned $700 in payments to Wingerden and Kovar. Dkt. 87 at 12.

In the Prior Order, the Court granted preliminary approval to the fee request. Dkt. 78 at 18. It also granted preliminary approval to the request for the reimbursement of $42,898.10 in litigation expenses. *Id.* at 20. As noted above, the Prior Order deferred the issue of an appropriate reimbursement to Wingerden and Kovar.

        1.    <u>Fees</u>

            a)    Percentage of the Fund Method

The Prior Order noted that fee awards in common fund cases typically range between 20-30% of the total settlement amount. Dkt. 78 at 17. Thus, the 25% that Plaintiffs' counsel request is within the normal range.

The Order also observed that

> Plaintiffs argue that the amount is reasonable in this action because the matter was handled on a contingency basis and it is reasonable for counsel to expect compensation for their work from the amount paid in settlement. Dkt. 73 Ex. A-1 at 13. Plaintiffs discussed the complexity of the legal and factual issues presented, in connection with the general approval factors. This also affects an assessment of the reasonableness of the fee request. Dkt. 72 at 4-5, 7-8. Among other things, Plaintiffs pointed out that there was a "very real risk . . . that some or all of . . . Plaintiffs' claims might not survive Defendants' motion to dismiss, likely opposition to class certification, or summary judgment attacks regarding, inter alia, falsity, scienter, loss causation, or damages." *Id.* Plaintiffs also recognized the risks that would be presented by other potential motions in the action, including ones for summary judgment as "continued prosecution of the [A]ction would be complex, expensive, and lengthy, with a more favorable outcome highly uncertain." *Id.* at 8.

*Id.*

Plaintiffs repeat these arguments in support of their Motion for Fees and Expenses. Further, as noted, no class member elected to opt out of the Settlement Class or objected to the terms of the agreement. Second Bravata Decl., Dkt. 90-1 at ¶ 4. Thus, the same conclusion is justified; 25% of the common fund is presumptively reasonable.

            (1)    Fees -- Lodestar Method Cross-Check

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-03080 JAK (JEMx) | Date | February 8, 2017 |
|---|---|---|---|
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | |

As of the Prior Order, Plaintiffs' counsel, which is working on a contingency basis, had recorded time that correlated to $438,435.75 in fees, excluding time spent on the supplemental briefing. Dkt. 77 at 2. Since that time, Plaintiffs' counsel have recorded an additional 55.7 hours. Counsel submitted the following charts that show each billing attorney, his or her hourly rate, and the tasks and hours worked. Dkt. 88 at 27-28.

*Rosen Law Firm*

| Professional (position)* | Hourly Rate | Hours Worked | Lodestar |
|---|---|---|---|
| Laurence M. Rosen (P) | $850 | 29.70 | $25,245.00 |
| Phillip Kim (P) | $675 | 59.66[3] | $40,270.50 |
| Jing Chen (A) | $525 | 3.20[4] | $1,680.00 |
| Yu Shi (A) | $500 | 0.55[5] | $275.00 |
| Kevin Chan (A) | $475 | 126.4[6] | $60,040.00 |
| Erica Stone (A) | $450 | 14.5 | $6,525.00 |
| Jing Jing Lin (PL) | $225 | 0.61 | $137.25 |
| Total | | 234.62 | $134,172.75 |

* P= Partner, A= Associate, PL= Paralegal

*Glancy Law Firm*

| Professional (position)* | Hourly Rate | Hours Worked | Lodestar |
|---|---|---|---|
| Rob Prongay (P) | $695 | 72.6 | $50,457.00 |
| Kara Wolke (P) | $675 | 127.7[7] | $86,197.50 |
| Lesley Portnoy (A) | $600 | 28.8 | $17,280.00 |
| Elaine Chang (A) | $395 | 390.3[8] | $154,168.50 |
| Harry Kharadjian (PL) | $290 | 34.9[9] | $10,121.00 |
| Jack Ligman (RA) | $265 | 11.1 | $2,941.50 |

---

[3] This figure includes 58.16 hours originally reported (+) 1.5 hours worked in preparation of the Motion for Final Approval and on Settlement administration matters.
[4] This figure includes 1.7 hours originally reported (+) 1.5 hours worked in miscellaneous matters.
[5] This figure includes 0.25 hours originally reported (+) 0.3 hours worked in miscellaneous matters
[6] This figure includes 118.5 hours originally reported (+) 7.9 hours worked in preparation of the Motion for Final Approval and on Settlement administration matters.
[7] This figure includes 121.8 hours originally reported (+) 5.9 hours worked in preparation of the Motion for Final Approval.
[8] This figure includes 355.4 hours originally reported (+) 34.9 hours worked in preparation of the Motion for Final Approval and on Settlement administration matters.
[9] This figure includes 36.5 hours originally reported (–) 5.3 hours reduced per Preliminary Approval Order (+) 3.7 hours worked in preparation of the Motion for Final Approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-03080 JAK (JEMx) | Date | February 8, 2017 |
|---|---|---|---|
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | |

| | | | |
|---|---|---|---|
| Michaela Ligman (RA) | $225 | 15.7 | $3,532.5 |
| Total | | 681.1 | $324,698.00 |

* P= Partner, A= Associate, PL= Paralegal, RA= Research Analyst

*Id.*

The work associated with these time charges includes the following: (i) pre-filing investigation and drafting the initial Complaint; (ii) motion practice; (iii) scheduling and attending discovery conferences, preparing a joint report, and attending the hearing; (iv) investigating, researching, and drafting the First Amended Complaint; (v) investigating, researching, and drafting the SAC; (vi) briefing the Motion to Dismiss and Motion to Strike and attending the related hearings; (vii) negotiating a settlement and attending mediation; (viii) drafting settlement documents and the Motion for Preliminary Approval; and (ix) drafting the Motion for Final Approval and conducting settlement administration.

### (a) Hourly Rates

In determining a reasonable hourly rate, "[t]he fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987).

Here, Plaintiffs' counsel state that the Glancy and Rosen firms each is "among the most experienced and skilled law firms in the securities litigation field, with a long and successful track record representing investors in cases of this kind." Joint Decl., Dkt. 88 at ¶ 73. They also provide the resumes for both firms. Ex. 4 to Joint Decl., Dkt. 88-4 (resume of Glancy Prongay & Murray); Ex. 5 to Joint Decl., Dkt. 88-5 (resume of the Rosen Law Firm). Based on the Court's experience with hourly charges in this District, the hourly rates provided by Plaintiffs are appropriate.

### (b) Hours Worked

The Prior Order concluded that the majority of the hours reported by Plaintiffs' counsel were reasonable and supported by time sheets submitted *in camera*. Dkt. 78 at 17. As noted, Plaintiffs' counsel now report 53.9 additional hours. They reflect time spent on the Motion for Final Approval and settlement administration, as well as 1.8 hours spent on "miscellaneous matters." This additional time represents approximately 6% of the 915.72 hours Plaintiffs' counsel report having worked on the case.

With the addition of these hours, the requested fee award of $750,000 represents a multiplier of approximately 1.63 over the amount of the lodestar. Factors to be considered in assessing the propriety

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-03080 JAK (JEMx) | Date | February 8, 2017 |
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | |

of such a multiplier include "the complexity of this case, the risks involved and the length of the litigation." *Vizcaino*, 290 F.3d at 1051. Courts "routinely" enhance multipliers to reflect the risk of non-payment in common fund cases. *Id*. At the hearing, Plaintiff's counsel noted that the case involved significant risks, and stated that counsel was in a strong position to assess these factors at the time of settlement. They were able to do so because they had done substantial independent research, litigated a motion to dismiss, and participated in mediation. Plaintiff's counsel also noted that the case was undertaken on a contingency basis, with no guarantee of any recovery. He stated that an upward adjustment in contingency fee cases helps ensure that there are attorneys willing to pursue cases like this one that serve the interest of enforcing the securities laws and deterring the violation of them.

In light of these factors, the multiplier of 1.63 is reasonable. Therefore, the 25% benchmark is appropriate. *See*, *e.g.*, *Vizcaino*, 290 F.3d at 1051 (approving a 3.65 multiplier on lodestar); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d at 1010 (multiplier of 1.7); *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *1, 7 (D. Ariz. Apr. 20, 2012) (multiplier of 1.74 in class action settlement of claims that Defendants violated Section 10(b) of the Exchange Act and 10(b)(5) of the Securities and Exchange Commission); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (stating that "[m]ultipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation" and upholding a multiplier of 3.6).

      2.      Costs and Expenses

Plaintiffs' counsel originally stated that they would seek reimbursement of no more than $100,000 in litigation expenses. Dkt. 73 Ex. A-1 at 13. They now seek reimbursement of $43,353.94. Dkt. 88 at ¶ 84. Counsel provide the following charts from each law firm describing litigation costs:

*Rosen Law Firm*

| **Expense Category** | **Amount** |
|---|---|
| Expert and Investigator Fees | $1,612.50 |
| Online Computer Legal Research and Hosting Fee | $268.20 |
| Court filing, Court Reporter, Deposition and Transcript Fees: | $400.00 |
| Mediation Fee | $3,387.50 |
| Pro Hac Vice and Certificate of Good Standing Fees | $325.00 |
| FedEx, Postage and Messenger Services | $91.71 |
| Service of Process Fees | $742.35 |
| Press releases and notice to class members | $1,761.70 |
| Travel, Transportation, Hotels and Meals | $7,164.93 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-03080 JAK (JEMx) | Date | February 8, 2017 |
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | |

| | |
|---|---|
| Photocopying, Scanning and Printing Documents | $383.55 |
| **TOTAL UNREIMBURSED EXPENSES (ROSEN)** | **$16,137.44** |
| Anticipated Travel/Transportation/Hotels/Meals | $2,500.00 |
| **GRAND TOTAL EXPENSES (ROSEN)** | **$18,637.44** |

*Glancy Law Firm*

| **Expense Category** | **Amount** |
|---|---|
| Experts (Damages) | $11,200.00 |
| Investigator Fees | $1,612.50 |
| Online Computer Legal Research | $3,658.76 |
| Court filing, Court Reporter, Deposition and Transcript Fees: | $314.28 |
| Mediation Fee | $3,492.75 |
| Service of Process Fees | $80.78 |
| Travel, Transportation, Hotels and Meals | $4,323.48 |
| Telephone/Communications | $33.95 |
| **TOTAL UNREIMBURSED EXPENSES (GLANCY)** | **$24,716.50** |

The requested costs in the total amount of $43,353.94 are appropriate and reasonable.

    3.    <u>Reimbursement for Lead Plaintiffs</u>

Lead Plaintiffs seek reimbursement for expenses in the total amount of $700. As noted above, this amount reflects a rate of $25/hour for Van Wingerden and $40/hour for Kovar. *Supra*, IV.B.1. For the reasons stated above, these amounts are reasonable. *Id.*

    C.    **Conclusion**

For the foregoing reasons, the Motion for Attorney's Fees and Costs is **GRANTED**.

**V.**    <u>**Conclusion**</u>

For the reasons stated above, the Motion for Final Approval of Class Action Settlement, Class Certification and Plan of Allocation and the Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses are **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | LA CV15-03080 JAK (JEMx) | | Date | February 8, 2017 |
|---|---|---|---|---|
| Title | Nickolas van Wingerden, et al. v. Cadiz, Inc., et al. | | | |

The order and judgment consistent with this Order will be issued separately.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | ak |